UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------x
EMIL SZAFRAN,

                    Plaintiff,

         -against-                          ORDER
                                            03-CV-2606(JS)
SANDATA TECHNOLOGIES, INC.,

                    Defendant.
----------------------------------X
APPEARANCES:
For Plaintiff:        Sanford F. Young, Esq.
                      Sanford F. Young, P.C.
                      225 Broadway Suite 2008
                      New York, NY 10007

Defendant:            Martin D. Edel, Esq.
                      Miller & Wrubel, P.C.
                      250 Park Avenue
                      New York, NY 10177

SEYBERT, District Judge:

         On March 28, 2003, Emil Szafran ("Szafran" or
"Plaintiff") filed a Complaint against Sandata Technologies, Inc.
("Sandata" or "Defendant")[1] alleging various claims arising from
the termination of Plaintiff's employment as a commission
salesperson with Sandata. A jury trial was held on this matter from
July 7, 2008 to July 22, 2008.  At the conclusion of the trial, the
jury entered a verdict awarding Plaintiff $382,753.00 on
Plaintiff's breach of contract claim, and entered an advisory
verdict recommending an award of $194,808.00 on Plaintiff's quantum

-----

[1] Plaintiff's Complaint also named Sandata Home Health
Systems, Inc., Sandata Acquisition Corp, and Sandata's Chief
Executive Officer, Bert Brodsky, as Defendants.  On July 14,
2008, Plaintiff stipulated in open Court to the dismissal of
these Defendants.

meruit claim.   After considering the evidence at trial and the parties' submitted findings of fact and conclusions of law, the Court declines to adopt the jury's advisory verdict, and finds in favor of Defendant on Plaintiff's quantum meruit claim.

<u>BACKGROUND</u>

In August of 2005, the parties had a jury trial before the Honorable Leonard Wexler on Plaintiff's breach of contract, employment discrimination, and retaliation claims (the "2005 trial").   At the conclusion of the trial, Judge Wexler entered a judgment as a matter of law on the breach of contract claim, and the jury rendered a verdict in favor of Defendants on the employment discrimination and retaliation claims.

In his judgment as a matter of law, Judge Wexler made the independent determination that Plaintiff's consulting agreement ("Consulting Agreement") with Sandata was fraudulent and illegal because it allowed Plaintiff to deliver the names of former customers to Sandata.   Judge Wexler found that this breached the confidentiality and non-compete provisions contained in Plaintiff's previous consulting agreement with Computer Outsourcing, Inc. ("COSI"), one of Sandata's competitors.

Plaintiff appealed Judge Wexler's decision and the jury verdict.   On January 5, 2007, the Second Circuit Court of Appeals upheld the jury verdict, but vacated Judge Wexler's judgment as a matter of law.   The Second Circuit held, "if there was some record

evidence that supported the District Court's conclusion that the Consulting Agreement induced Szafran to breach his obligations under the COSI Agreement, there was at most a material factual dispute that made judgment as a matter of law improper." Accordingly, the Second Circuit remanded for further proceedings on the breach of contract claim and the illegality defense.

On remand, Plaintiff argued that he should be permitted to raise claims of quantum meruit and implied contract in light of the new illegality issue.  Plaintiff claimed that he was entitled to commissions from Defendant for work Plaintiff did on a project for the Town of North Hempstead (the "Town").  On May 2, 2008, the Court granted Plaintiff's request.

The Court presided over a trial from July 7, 2008 to July 22, 2008.  Both parties presented witnesses and exhibits.

<u>DISCUSSION</u>

I.   <u>Motion to Strike</u>

Defendant moves to strike Plaintiff's Proposed Findings of Fact and Conclusions of Law.  Although the Court agrees with Defendant that several of Plaintiff's statements contain citations to inadmissible evidence, or fail to contain any citation whatsoever, the Court nonetheless declines to strike Plaintiff's submission.  The Court has only considered those facts that are supported by a valid citation to admissible evidence.

3

II.   Plaintiff's Quantum Meruit Claim

Based upon the evidence and arguments presented, the Court makes the following findings of fact and conclusions of law.

A.   Findings of Fact

On or about May 31, 1997, Jack Szafran, Plaintiff's brother, and Sandata entered into a Consulting Agreement. (Def.'s Findings P. 4, ¶ 12, 13.)  Jack Szafran signed the Consulting Agreement as Plaintiff's nominee with Plaintiff's consent. (Trial Transcript ("Tr.") 437, 438.)  Plaintiff's name does not appear anywhere on the Consulting Agreement. (Pl.'s Ex. 1.)  Plaintiff had Jack Szafran serve as nominee at least in part because at that time Plaintiff had a non-compete provision with COSI, his former employer, and Plaintiff did not want to sign the Consulting Agreement while the non-compete provision was in place. (Tr. 438.)

Pursuant to the Consulting Agreement, Sandata retained Plaintiff as an "independent contractor . . . in relation to the development, implementation[,] and support of the automated time and attendance system, home health care systems[,] and such other consulting services as may be required by the Company and agreed to by the Consultant (collectively, the "Services"). (Pl.'s Ex. 1. ¶ 1.)  "As consideration for all services . . . rendered and performed under [the] Agreement," Plaintiff would receive a base salary of $96,000.00 for the first year, and $125,000.00 per year for the remainder of the Consulting Agreement's five-year term (the

4

"Base Consulting Fees").   (Id. ¶ 5.)

In addition to the Base Consulting Fees, Plaintiff was entitled to commission payments. (Id.) Pursuant to the Consulting Agreement, Plaintiff was entitled to commissions based upon (a) Applicable Revenues and (b) Other Revenues received by the Company at a rate of 10% of the Other Revenues. (Id.) The Consulting Agreement defined "Applicable Revenues" as "gross revenues received by the Company during the relevant annual period in connection with the Company's home care data processing services (other than Santrax-related services) rendered to the entities set forth in Schedule B [attached to the Consulting Agreement]" less any sales or other taxes collected by the Company or rebates or credits granted. (Id.)  "Other Revenues" was defined as

> gross revenues received by the Company during the relevant annual period from the Consultant's sale of (x) Santrax-related services to the entities set forth on Schedule B and (y) the Company's home care data processing services including Santrax-related services to entities other than the entities set forth on Schedule B.

(Id.)

Bert Brodsky ("Brodsky") was the Chief Executive Officer of Sandata. (Tr. 70.) Brodsky served as a volunteer on the Town's Department of Technology (the "Department"). (Tr. 909.) During his service with the Department, Brodsky discovered that the Town was not "Y2K" compliant; Brodsky alerted the Town of his

concerns..[2]  (Tr. 909, Pl.'s Findings ¶ 70.)  At some point, Doreen

Banks, the Councilperson in charge of technology for the Town,

contacted Brodsky and discussed the potential Y2K issue.  (Tr.

1386, 1387, 1469, 1470.)  The Town determined that it needed to

address the potential Y2K problem, and submitted a Request for

Proposal ("RFP") to Sandata.  (Def.'s Findings P. 12 ¶ 12, Pl.'s

Findings ¶ 80, Tr. 1466, 1467.)  Brodsky's testimony reveals that

the bidding process for the Town's contract was not very

competitive.  (Tr. 1386, 1466-1470.)

On March 4, 1999, Plaintiff submitted a Proposal on

behalf of Sandata to the Town, and listed himself as the contact

person for Sandata.  (Def.'s Stmt ¶ 15, Pl.'s Ex. 20, Tr. 1479,

1480.)  In addition to submitting the Proposal, Plaintiff was

responsible for supervising the installation of Sandata's services

on the Town's computers (Tr. 1030.)  The initial Proposal to the

Town identified Govern Software, Inc. ("Govern") as the entity

providing the software.

During his work on the original Proposal, Plaintiff

learned that the Town was utilizing an outdated computer system.

(Pl.'s Findings ¶ 97.)  Plaintiff contacted Govern and negotiated

an agreement wherein Govern would supply the new computer system to

the Town, Sandata would earn 40% profit from the licensing fees

---

[2] At the turn of the twentieth century, many companies
anticipated that they would encounter computer problems when the
"1999" date changed to "2000."  (Tr. 1380.)

paid by the Town, 50% of "Govern Systems' annual maintenance fees paid by the Town," and 50% of all subsequent sales of Govern software licenses and maintenance agreements to other municipal customers.  (Pl.'s Findings ¶ 101; Def.'s Findings P. 13 ¶ 17; Pl.'s Ex. 26.)  Plaintiff recommended that the Town implement a new system, and submitted a proposal describing Sandata's services and the implementation of Govern's software for the new system. (Def.'s Findings P. 14, ¶ 18, Pl.'s Findings ¶ 118, Pl.'s Ex 22.) As a result of the Y2K work and the implementation of the new Govern system, Sandata ultimately received $1,378,585 in revenue from the Town.  (Def.'s Findings P. 14, ¶ 18; Pl.'s Findings ¶ 98.) The original estimate for the Y2K project was $100,000.  (Def.'s Findings P. 13, ¶ 16; Pl.'s Ex. 18.)

From the inception of Plaintiff's involvement with the Town until the project's near completion, Plaintiff did not request commissions or any other form of payment for his services on the Town's project.  (Def.'s Findings P. 13, ¶ 23.)  On November 13, 2000, toward the end of the Town's project, Plaintiff contacted Stephen Davies ("Davies"), the President of Sandata, and requested a commission for his work on the Town's project.  (Pl.'s Ex. 96.) Sandata rejected Plaintiff's request; Davies informed Plaintiff that he was not entitled to a commission because Brodsky was responsible for procuring the Town as a client.  (Def.'s Findings P. 15, ¶ 25; Tr. 607.)

7

Plaintiff did not confront Brodsky or raise the issue of commissions for his work with the Town again until May of 2002. (Def.'s Findings P. 15, ¶ 28, 31; Tr. 606-609.)  During that time, Plaintiff asked for compensation for several other projects. (Def.'s Findings P. 15, ¶ 29, 33.)  On May 29, 2002, Plaintiff hand-delivered a note to Freund for Brodsky that asked for commissions for several projects, and included a request for commissions for Plaintiff's work on the Town's project.  (Pl.'s Ex. 5.)  Plaintiff did not receive commissions for his work with the Town.

B.   <u>Applicable Law</u>

1.   <u>Advisory Verdict</u>

At the outset, the Court addresses Plaintiff's argument that the quantum meruit claim should not have been submitted to the jury for an advisory verdict.  Pursuant to Federal Rule of Civil Procedure 39(c), "[i]n an action not triable of right by a jury, the court, on motion or on its own: (1) may try any issue with an advisory jury."  Quantum meruit "is an equitable claim that does not entitle a party to a jury trial."  <u>Golden Pac. Bancorp v. FDIC</u>, No. 95-CV-9281, 2002 U.S. Dist. LEXIS 24961, at *50 (S.D.N.Y. Dec. 24, 2002).  The Court informed the parties that Plaintiff's quantum meruit claim would be submitted to the jury for an advisory verdict

only.[3]  (Tr. 1649, 1650.)  Plaintiff takes issue with the timing of the Court's decision; however, a Court may determine that a jury verdict will be advisory after the start of trial.  See Merex A.G. v. Fairchild Weston Sys., 29 F.3d 821, 824 (2d Cir. 1994) (finding that the district court "did not abuse its discretion by declaring the jury advisory after the plaintiff rested its case").

    2.  Quantum Meruit

    Plaintiff's Complaint and Plaintiff's Findings of Fact and Law assert a claim for quantum meruit and unjust enrichment. As the Court informed the parties during the trial, "[a]pplying New York law, the Court "may analyze quantum meruit and unjust enrichment together as a single quasi contract claim." Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) (citing Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 663 (2d Cir. 1996); see also Seiden Assocs., Inc. v. ANC Holdings, Inc., 768 F. Supp. 89, 96 (S.D.N.Y.

---

   [3] Contrary to Defendant's assertion, the in pari delicto defense was not submitted to the jury for an advisory verdict. The Court was clear from the inception of this trial that it would submit the in pari delicto defense to the jury in light of the Second Circuit's mandate. Although in pari delicto is an affirmative defense, neither party raised its objection to submitting that defense to the jury.  Comparatively, Defendant clearly objected to submitting the quantum meruit claim to the jury, and in light of the lack of consensus, the Court determined that the quantum meruit claim should be submitted for an advisory verdict only.  See Merex A.G. v. Fairchild Weston Sys., 29 F.3d 821, 826 (2d Cir. 1994 ("[A]bsent the consent of the parties, it would be highly questionable for a court to submit an equitable issue to an advisory jury for a binding verdict.")

1991) (finding that "quantum meruit and unjust enrichment are not separate causes of action," and that "unjust enrichment is a required element for an implied-in-law, or quasi contract, and quantum meruit, meaning 'as much as he deserves,' is one measure of liability for the breach of such a contract"), rev'd on other grounds, 959 F.2d 425 (2d Cir. 1992)).

The jury found in favor of Plaintiff on the quantum meruit claim.  "Although its verdict is not binding, an advisory jury's purpose is 'to enlighten the conscience of the Court.'" Koppel v. 4987 Corp., No. 96-CV-7570, 2001 U.S. Dist. LEXIS 377, at *33 (S.D.N.Y. Jan. 17, 2001) (quoting Skoldberg v. Villani, 601 F. Supp. 981, 982 (S.D.N.Y. 1985).  "[I]t is wholly within the discretion of the trial court whether to accept or reject in whole or in part the verdict of the advisory jury." Hine v. Mineta, 238 F. Supp. 2d 497, 499 (E.D.N.Y. 2003).

"In order to recover in quantum meruit under New York law, a claimant must establish '(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'" Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) (quoting Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 69 (2d Cir. 2000).  "In order to establish a right to compensation under a theory of quantum meruit

10

or quasi-contract, one must establish that he had a reasonable expectancy of receiving such compensation." Argo Marine Systems, Inc. v. Camar Corp., 755 F.2d 1006, 1011 (2d Cir. 1985). "[W]here a valid agreement exists between the parties, an action in quantum meruit to prevent unjust enrichment ordinarily is not available." New Windsor Volunteer Ambulance Corps., Inc v. Meyers, 442 F.3d 101, 118 (2d Cir. 2006).

Plaintiff is not entitled to quantum meruit compensation for his work with the Town. The Court concludes that Plaintiff's services were covered by the parties' Consulting Agreement. Pursuant to the Consulting Agreement, Plaintiff received a base salary for his services, which included "consulting services as may be required by the Company and agreed to by the Consultant." (Pl.'s Ex. 1. ¶ 1.) Such services included preparing a bid for the Town, an entity that had a prior relationship with Brodsky, and providing the Town with Sandata's various services. "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co., 70 N.Y.2d 382, 388, 516 N.E.2d 190, 521 N.Y.S.2d 653, 656 (1987). Plaintiff may not recover in quantum meruit for a service that he was already compensated for by the parties' written agreement.

Additionally, the Court finds that Plaintiff did not

11

render services to Sandata on the Town project with the reasonable expectation of receiving compensation.  Plaintiff began work on the project and did not request additional compensation for it until the project had neared completion.  It is clear that neither party intended that Plaintiff would receive additional commissions for his work with the Town because Plaintiff's work with the Town was covered by the parties written agreement.  The Court therefore finds in favor of Defendant on Plaintiff's quantum meruit claim.

<u>CONCLUSION</u>

Based upon the findings of fact noted herein, the Court finds that Plaintiff has not shown that he is entitled to recover under a quantum meruit theory for his work on the Town of North Hempstead project.  The Court therefore declines to adopt the jury's advisory verdict on this claim.

The Clerk of the Court is directed to enter a judgment on behalf of Defendant on Plaintiff's quantum meruit claim.  Based upon the jury's verdict, the Clerk of the Court is additionally directed to enter a judgment in favor of Plaintiff on the breach of contract claim, in the amount of $382,753.00 plus interest, and a judgment in favor of Defendant on Plaintiff's implied contract claim.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    Central Islip, New York
          March 30, 2009

12